IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 10-cv-0162-DME-CBS

SIDNEY M. BLAKE,
        Plaintiff,
v.

BRIAN WEBSTER,
JULIE FULLER,
RYDER MAY,
DOCTOR FORTUNATO, and
KEVIN MILYARD,
        Defendants.
_____

RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

Magistrate Judge Craig B. Shaffer

        This civil action comes before the court on Defendants' Motion for Summary Judgment
(filed March 2, 2011) (Doc. # 80).  Pursuant to the Order of Reference dated March 25, 2010
(Doc. # 14) and the memorandum dated March 2, 2011 (Doc # 81), this matter was referred
to the Magistrate Judge.  The court has reviewed the Motion, Mr. Blake's Response (filed April
1, 2011) (Doc. # 84), Defendants' Reply (filed April 15, 2011) (Doc. # 88), the exhibits and
affidavits, the entire case file, and the applicable law and is sufficiently advised in the
premises.


I.      Statement of the Case

        Mr. Blake is currently incarcerated at the Colorado Department of Corrections'
("CDOC's") Centennial Correctional Facility in Cañon City, Colorado.  (*See* Notice of Change
of Address (Doc. # 89)).  The events giving rise to the claims in this lawsuit occurred at the
CDOC's Sterling Correctional Facility ("SCF") located in Sterling, Colorado. (See Amended
Complaint (Doc. # 11)).  Mr. Blake alleges that he began experiencing chest pain in
November 2008.  On December 9, 2008, Mr. Blake was diagnosed with and treated for
pleural effusion, an excess of pleural fluid collected around the lungs.  Mr. Blake alleges that

commencing on December 7, 2008, he was denied treatment for his serious medical condition of pleural effusion.  (*See* Doc. # 11 at 5-7 of 11).  He also alleges that on December 10, 2008, his medical treatment was delayed for "3 to 4 hours for Sterling Correctional Facility to arrang[e] transport for me to be transported to Denver."  (*See* Doc. # 11 at 7 of 11). Proceeding *pro se*, Mr. Blake alleges two claims pursuant to 42 U.S.C. § 1983 against the Warden and several health care providers at SCF for violation of his Eighth Amendment rights, based on denial and delay of medical treatment.  Mr. Blake seeks injunctive and declaratory relief, and compensatory damages.  (*See* Doc. # 11 at 11 of 11).  Defendants move for summary judgment on the Amended Complaint pursuant to Fed. R. Civ. P. 56, arguing that Mr. Blake fails to establish deliberate indifference to a serious medical need and that they thus have qualified immunity from his claims.

II.     Standard of Review

        "Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir.2000) (citation omitted).  The court examines "the record to determine whether any genuine issue of material fact [is] in dispute." *Id.*   The court must examine "the factual record and reasonable inferences therefrom in the light most favorable to the party opposing the motion." *Id.*  "An issue of fact is material if under the substantive law it is essential to the proper disposition of the claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (internal quotation marks and citation omitted).   "[A]n issue of material fact is genuine only if the nonmovant presents facts such that a reasonable jury could find in favor of the nonmovant." *Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999).  "[W]here the non moving party will bear the burden of proof at trial on a dispositive issue that party must go beyond the pleadings and designate specific facts so

2

as to make a showing sufficient to establish the existence of an element essential to that party's case in order to survive summary judgment." *Sealock*, 218 F.3d at 1209.

In an action under section 1983, "[t]he doctrine of qualified immunity shields government officials performing discretionary functions from liability for damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Toevs v. Reid*, 646 F.3d 752, 755 (10th Cir. 2011) (internal quotation marks and citations omitted).   To the extent that Mr. Blake is suing Defendants in their individual capacities,  Defendants raise the defense of qualified immunity. "[Q]ualified immunity is an affirmative defense to a section 1983 action, providing immunity from suit from the outset."  *Adkins v. Rodriguez*, 59 F.3d 1034, 1036 (10th Cir. 1995). Whether a defendant is entitled to qualified immunity is a legal question.  *Wilder v. Turner*, 490 F.3d 810, 813 (10th Cir. 2007).

"When the defense of qualified immunity is raised in a summary judgment motion," the court applies "special rules to determine whether the motion was properly granted or denied." *Reynolds v. Powell*, 370 F.3d 1028, 1030 (10th Cir. 2004) (internal quotation marks and citation omitted).  *See also Thomson v. Salt Lake Cnty.*, 584 F.3d 1304, 1312 (10th Cir. 2009) (court's review of summary judgment "in the qualified immunity context differs from that applicable to review of other summary judgment decisions.").   "[T]o avoid judgment for the defendant based on qualified immunity, the plaintiff must show that the defendant's actions violated a specific statutory or constitutional right, and that the constitutional or statutory rights the defendant allegedly violated were clearly established at the time of the conduct at issue." *Toevs*, 646 F.3d at 755 (internal quotation marks and citations omitted).  *See also Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009) ("When a defendant asserts qualified immunity at summary judgment, the burden shifts to the plaintiff to show that: (1) the defendant violated a constitutional right and (2) the constitutional right was clearly established.").   The court "may address these questions in whatever order is appropriate under the circumstances." *Toevs*, 646 F.3d at 755.  *See also Herrera v. City of Albuquerque*,

589 F.3d 1064, 1070 (10th Cir. 2009) ("A reviewing court may exercise [its] sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.") (internal quotation marks and citation omitted). "If, and only if, the plaintiff meets this two-part test does a defendant then bear the traditional burden of the movant for summary judgment – showing that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law." *Clark v. Edmunds*, 513 F.3d 1219, 1222 (10th Cir. 2008) (internal quotation marks omitted). *See also Herrera*, 589 F.3d at 1070 ("Qualified immunity is applicable unless" the plaintiff can satisfy both prongs of the inquiry) (internal quotation marks and citation omitted).

The court must "view the facts in the light most favorable to the plaintiff." *Toevs*, 646 F.3d at 755. Nevertheless, "a plaintiff's version of the facts must find support in the record." *Thomson*, 584 F.3d at 1312. As the Amended Complaint has been sworn to under penalty of perjury (*see* Doc. # 11 at 11 of 11), the court may treat it as an affidavit. *Green v. Branson*, 108 F.3d 1296, 1301 n. 1 (10th Cir. 1997). Where the court treats a verified complaint as an affidavit, whether a party's affidavit in opposition to summary judgment is "sufficient to create a genuine issue of material fact must be evaluated in light of the principle that 'conclusory allegations without specific supporting facts have no probative value.' " *Nichols v. Hurley*, 921 F.2d 1101, 1113 (10th Cir. 1990) (quoting *Evers v. General Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985)). "[T]here may be cases where the sole reliance on a verified complaint would be insufficient to meet a nonmoving party's burden . . . , especially when the allegations contained in the pleading are merely conclusory." *Conaway v. Smith*, 853 F.2d 789, 792-93 (10th Cir. 1988). The court must determine whether Mr. Blake has met his burden of presenting specific facts to overcome Defendants' Motion.

III.   Analysis

Section 1983 creates a cause of action where a "person . . . under color of any statute, ordinance, regulation, custom or usage, of any State . . . subjects, or causes to be subjected,

4

any citizen of the United States or other person . . . to the deprivation of any rights, privileges or immunities secured by the Constitution."  Section 1983 does not create any substantive rights; rather, it creates only a remedy for violations of rights secured by federal statutory and constitutional law.  *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 616-18 (1979). *See also Southern Disposal, Inc. v. Texas Waste Management*, 161 F.3d 1259, 1265 (10th Cir. 1998) ("In order to successfully state a cause of action under section 1983, [Plaintiff] must allege . . . the deprivation of a federal right. . . .") (internal quotation marks and citation omitted).  To establish a claim under § 1983, a plaintiff must prove he was deprived of a right secured by the Constitution or laws of the United States and that the alleged deprivation was committed under color of law.  *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999).

A.      Liability of Defendants in their Official Capacities

Mr. Blake does not specify whether he sues Defendants in their individual capacities, their official capacities, or both.  (*See* Doc. # 11).  To the extent that Mr. Blake is suing Defendants in their official capacities, he is actually attempting to impose liability on their employer, the CDOC.  *See Hafer v. Melo*, 502 U.S. 21, 25 (1991) (suit against a state official in his or her official capacity is treated as a suit against the state).  The CDOC is considered an agency of the State of Colorado.  *See* Colo. Rev. Stat. § 24-1-128.5.  The Eleventh Amendment provides immunity for state governmental entities sued in federal court for monetary damages under § 1983.  *Ambus v. Granite Board of Education*, 995 F.2d 992, 994 (10th Cir. 1993) (citation omitted).  The Eleventh Amendment confers total immunity from suit, not merely a defense to liability.  *Ambus*, 995 F.2d at 994 (citation omitted).  Further, states and state officials sued in their official capacities are not "persons" within the meaning of § 1983. *Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989).  To the extent that Mr. Blake seeks monetary damages from Defendants in their official capacities pursuant to § 1983, such claim is properly dismissed with prejudice.

In addition to monetary damages, Mr. Blake seeks relief in the nature of injunctive relief "ordering any further medical needs be addressed immediately and that I be given any necessary after care free of charge." (*See* Doc. # 11 at p. 11 of 11).  Actions in federal court seeking injunctive relief against state officials are not always barred by the Eleventh Amendment.  *See Ex parte Young*, 209 U.S. 123, 159-60 (1908) (holding that the Eleventh Amendment generally does not bar official-capacity claims seeking prospective injunctive relief from a state official).  *See also Will*, 491 U.S. at 71 n. 10 ("Of course a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.' ") (quoting *Kentucky v. Graham*, 473 U.S. 159, 167 (1985)).

The Eleventh Amendment does not bar actions for damages against state officials in their individual capacities.  *Graham*, 473 U.S. at 164.  To the extent that Mr. Blake is suing Defendants in their individual capacities, personal capacity suits pursuant to § 1983 seek to impose personal liability upon a government official for actions he or she takes under color of state law.  *Graham*, 473 U.S. at 165-67.  The court proceeds to evaluate whether Mr. Blake has established a claim against Defendants in their official capacities for injunctive relief or in their individual capacities.

B.      Eighth Amendment

"[P]risoners have an Eighth Amendment right to adequate medical care. . . ." *Oxendine v. Kaplan*, 241 F.3d 1272, 1276 (10th Cir. 2001).  To demonstrate an Eighth Amendment violation, an inmate must satisfy both objective and subjective elements.  The objective component is met if the deprivation is "sufficiently serious," *i.e.*, one that "has been diagnosed by a physician as mandating treatment or . . . is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Oxendine*, 241 F.3d at 1276 (quoting *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir .1999)).  *See also Sealock*, 218 F.3d at 1209 (a "serious medical need" is one that has been diagnosed by a physician as mandating

treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention) (citations omitted).  The subjective component of an Eighth Amendment claim is met if the defendant "knows of and disregards an excessive risk to inmate health or safety." *Sealock*, 218 F.3d at 1209.  "In keeping with the principle that government officials are generally afforded wide latitude when fulfilling their discretionary functions, . . . in cases where prisoners allege that inadequate or delayed medical care violated their Eighth Amendment rights, it has been established that '[p]rison officials violate the Eighth Amendment [only] when they are deliberately indifferent to the serious medical needs of prisoners in their custody.'" *Id*. *See also Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (prison officials violate the Eighth Amendment if their "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain"); *Sawyer v. County of Creek*, 908 F.2d 663, 667 (10th Cir. 1990) (detainee cannot demonstrate a violation of substantive due process upon a lesser showing than deliberate indifference to serious medical needs), *overruled on other grounds by Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163 (1993).

To the extent that Mr. Blake alleges that medical treatment was delayed as well as denied, he is required to make an additional showing that the delay in receiving care caused substantial harm.  *See Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005) ("[A] delay in medical care only constitutes an Eighth Amendment violation where the plaintiff can show the delay resulted in substantial harm. The substantial harm requirement may be satisfied by lifelong handicap, permanent loss, or considerable pain.") (internal quotations and citations omitted). Further, "[a] delay in treatment that is unintentional or unavoidable, even though it may result in the inmate suffering additional harm, is not actionable." *Grassi v. Corrections Corporation of America,* 2008 WL 5172154 * 5 (D. Colo. 2008) (citation omitted).[1]  "Thus, to prove a claim of deliberate indifference predicated on the delay in providing medical care, an inmate must

---

[1]    A copy of this unpublished decision is attached to this Recommendation.

show: (i) that he suffered from a serious medical need; (ii) that medical care to address that need was unnecessarily delayed; (iii) that the delay manifested the defendant's subjective disregard for the inmate's needs; and (iv) that the delay caused the inmate to suffer substantial harm, whether in the form of significant pain or permanent physical injury." *Id.*

On September 29, 2008, Mr. Blake was seen at the SCF medical facility at SCF by Physician Assistant ("P.A.") Chamjock for his complaint that he was losing his voice. (See Defendants' Exhibit A-1 (Doc. # 80-1) at 17 of 18). Mr. Blake did not report chest pains or coughing up blood and was in no acute distress. (*See id.*). Mr. Blake did not display labored breathing and his temperature, pulse, respiration, and blood pressure were within normal ranges. His pulse oxygenation was 100 percent. (*See id.*). On October 21, 2008, Mr. Blake was seen by P.A. Chamjock for his complaint of hyperglycemia. (See Doc. # 80-1 at 18 of 18). Mr. Blake's temperature, pulse, respiration, and blood pressure were within normal ranges. His pulse oxygenation was 99 percent.

On November 13, 2008, Mr. Blake was seen by Nurse Bredehoft for his complaint that his "chest hurt" when he took a deep breath. He stated that his chest had been hurting for the past "couple of days." His temperature, pulse, respiration, and blood pressure were within normal ranges. His pulse oxygenation was 100 percent. Nurse Bredehoft noted that Mr. Blake's breathing was slightly shallow, but his respiration rate was normal. Mr. Blake was instructed to return to the clinic if his pain increased or if he had shortness of breath or radiating pain. (*See* Doc. # 80-1 at 2-3 of 18).

On November 18, 2008, Mr. Blake was seen by P.A. Chamjock. Mr. Blake's temperature, pulse, respiration, and blood pressure were all within normal ranges. (See Doc. # 80-1 at 4 of 18). His pulse oxygenation was 96 percent. Mr. Blake complained of hoarseness for approximately four months and stated that his hoarseness "has caused him musculoskeletal chest pain." (*See id.*). He had a weak voice and hoarseness but was not in acute distress. An examination indicated normal ear, nose, and mouth and a throat culture was negative. Aggressive treatment of Mr. Blake's gastrointestinal reflux was pursued with

medication. An off-site visit for a laryngoscope or a barium swallow was ordered to rule out cancer. (See Doc. # 80-1 at 4 of 18).

On November 29, 2008, Mr. Blake was seen by Nurse Herschberger. His temperature, pulse, respiration, and blood pressure were all within normal ranges. His pulse oxygenation was 96 percent. Mr. Blake complained of "chest wall pain and hoarseness," rating the pain as a five on a ten-point scale. Mr. Blake was not in distress, but had difficulty speaking. It was noted that he had been seen for the same issue on November 18, 2008, and that a barium swallow had been arranged at Denver Health Medical Center. (See Doc. # 80-1 at 5 of 18).[2]

On December 7, 2008, Mr. Blake was seen by Defendant Fuller, a Registered Nurse employed in the SCF medical unit. Mr. Blake had an elevated temperature of 101.7, an elevated pulse of 104, and labored respirations of 24. His pulse oxygenation was 100 percent. Mr. Blake reported being short of breath, warm, and sweating. He was alert and not in acute distress. His lungs were "clear with good air exchange." Defendant Fuller noted that Mr. Blake had a red throat and his tonsils appeared swollen. He was hoarse and complained "of pain with [percussion] to sinus." (See Doc. # 80-1 at 7-8 of 18). Defendant Fuller contacted Defendant Webster, the on-call P.A. Defendant Webster ordered a throat culture, which tested negative, and prescribed an antibiotic (Amoxicillin) as well as Motrin and Zantac. Mr. Blake was given lay-in status for 24 hours and advised to return to the clinic as needed. (See Fuller Affidavit, Defendants' Exhibit A-3 (Doc. # 80-3)).

On December 9, 2008, Mr. Blake was seen by Defendant May, a Registered Nurse employed in the SCF medical unit, for his complaint of chest pain.[3] (See Doc. # 80-1 at 10

_____

[2]    Mr. Blake does not sue P.A. Chamjock, Nurse Bredehoft, or Nurse Herschberger for their actions on September 29, October, 21, November 13, November 18, and November 29, 2008.

[3]    While a Nursing Protocol completed by Defendant May indicates a date of December 8, 2008, he believes it occurred and should have been dated December 9, 2008. (See May Affidavit, Defendants' Exhibit A-4 (Doc. # 80-4) at ¶ 2).

of 18).  Mr. Blake's temperature was 97.9, pulse 120, respiration 32, blood oxygen 100 percent, and he was diaphoretic.   (*See id.*). Mr. Blake  stated that his pain was worse with deep breathing and with palpation.  (*See id.*). Defendant May did an EKG that returned normal results.  Mr. Blake's lungs were noted as "clear throughout," although "diminished in the bases."  (*See* Doc. # 80-1 at 10 of 18). Defendant May noted that Mr. Blake had been seen for similar symptoms on December 7, 2008.  Defendant May contacted Defendant Webster and followed his instructions to discontinue the Motrin, start Indomethacin, and take a chest X-ray that day. (*See id.*; *see also* May Affidavit, Defendants' Exhibit A-4 (Doc. # 80-4)).

Following the chest X-ray, Defendant Webster saw Mr. Blake on December 9, 2008. Defendant Webster consulted Defendant Dr. Fortunato, an employee of the State of Colorado working at the SCF medical unit, about the chest x-ray.  Defendant Fortunato concluded that the chest X-ray indicated pleural effusion.  Mr. Blake's vital signs were: temperature  99.3, pulse 72, respiration 20, and pulse oxygen 100 percent.  Defendant Webster discontinued some of Mr. Blake's medications, prescribed other medications, and made arrangements to transfer him to the Sterling Regional Medical Center in Sterling, Colorado for an echo-cardiogram and further evaluation. (See Doc. # 80-1 at 12-13 of 18; Webster Affidavit, Defendants' Exhibit A-5 (Doc. # 80-5)).

Mr. Blake was examined at the Sterling Regional Medical Center on December 10, 2008, where an echo-cardiogram revealed pericardial effusion.  (See Doc. # 80-1 at 14 of 18). Mr. Blake was transferred to Denver Health Medical Center, where a pericardial drain was performed on December 11, 2008, alleviating Mr. Blake's symptoms.  (*See id.* at 15 of 18). The cause of the pericardial effusion remains unknown.  (*See* Doc. # 84 at 10 of 19).

As a threshold matter, Mr. Blake must present sufficient facts to show that Defendants' conduct violated his Eighth Amendment rights. *See DeSpain v. Uphoff*, 264 F.3d 965, 971 (10th Cir. 2001).  As to the objective component of the Eighth Amendment claim, the court assumes that Mr. Blake's diagnosis of pleural effusion constituted a serious medical need for

purposes of an Eighth Amendment claim. As to the subjective component, the court concludes that Mr. Blake has not come forward with facts that show Defendants were deliberately indifferent to his serious medical needs.

In response to Defendants' Motion, Mr. Blake does not specifically address Defendants' statement of undisputed material facts. Rather, Mr. Blake raises factual allegations that: (1) he had elevated blood pressure readings between September 29, 2008 and December 9, 2001 (*see* Response (Doc. # 84) at 2 of 19); (2) one of his medical records was altered (*see id.*); (3) he was given "lay-in" status on December 9, 2008 (*see id.* at 3 of 19); and (4) his mother's telephone call to complain about his medical treatment caused his transfer to an outside medical facility (*see id.* at 3 of 19).[4] Other than these allegations, Mr. Blake does not challenge Defendants' statement of undisputed facts.

First, contrary to Mr. Blake's assertion in his Response, the evidence shows that on September 29, 2008, November 13, 2008, November 18, 2008, November 29, 2008, and December 7, 2008, Mr. Blake's blood pressure readings were not elevated. (*See* Doc. # 80-1 at 2, 4-5, 7-8, 17 of 18). On October 21, 2008, Mr Blake's blood pressure could be characterized as slightly elevated. (*See* Doc. # 80-1 at 18 of 18). The evidence shows that on December 9, 2008, Mr. Blake's blood pressure was somewhat elevated. (*See* Doc. # 80-1 at 10, 12 of 18). Also on December 9, 2008, an X-ray was done, possible pleural effusion was identified, and Mr. Blake's transfer to Sterling Regional Medical Center was arranged. Mr. Blake's assertion of elevated blood pressure does not demonstrate the existence of a genuine issue of material fact pointing to denial or delay of medical care or deliberate indifference by the Defendants.

Second, Mr. Blake asserts that a December 7, 2008 Nursing Protocol record regarding his treatment was altered. (*See* Doc. # 80-1 at 8 of 18). Mr. Blake attached two copies of the

_____

[4] Unrelated to the instant Motion, Mr. Blake also states that Defendants have not made his X-rays available to him or paid the costs ordered by the court on March 14, 2011 (*see* Doc. # 83). Defendants submit Exhibit A-10 demonstrating delivery of these items to Mr. Blake.

Protocol to his Response.  (*See* Doc. # 84 at 8, 9 of 19).  There are apparent hand-written notations on one of the copies.  (*See* Doc. # 84 at 8 of 19).  The differences between the two copies are limited to checklist observations of Mr. Blake's respiration, chest wall movement, and chest wall tenderness.  (*See id.*).  While Mr. Blake's respirations were labored, no chest wall tenderness was noted.  (*See* Doc. # 84 at 9 of 19).  Mr. Blake does not assert that the checklist observations are incorrect.  These notations are not inconsistent with and in some respects are included in the Ambulatory Health Record of the same date.  (*See* Doc. # 80-1 at 6 of 18).

Third, Mr. Blake alleges he was given lay-in status on a date other than December 7, 2008, referring to Defendants' Exhibit A-1 "between A-1 0009 and A-1 00011."  (*See* Doc. # 80-1 at 10 of 18).  Defendants concede that the lay-in note is authentic and was written by Defendant May, apparently as part of Mr. Blake's clinic visit on December 9, 2008.  Later the same day, Defendant Webster saw Mr. Blake following the chest X-ray, Dr. Fortunato identified plural effusion, and arrangements were made for Mr. Blake's transfer to Sterling Regional Medical Center.  Mr. Blake's lay-in status on December 9, 2008 does not create a disputed issue of material fact with regard to deliberate indifference of any Defendant.

Finally, Mr. Blake argues that he was taken to the medical clinic on December 10, 2008, "after his mother had called to complain about her son [sic] health . . . ."  (*See* Doc. # 84 at 3 of 19).  There is no evidence in the record that his mother contacted SCF on December 9 or 10, 2008.   The evidence indicates only that Mr. Blake's mother contacted SCF in July and August of 2009.  (*See* Doc. # 84 at 14-15 of 19; *see also* Defendant Milyard's Amended and Supplemental Responses to Plaintiff's Requests for Admission, Defendants' Exhibit A-11 (Doc. # 88-2 at 2-3, 6-9 of 9)).  Mr. Blake's assertion does not establish disputed issues of fact material to his claims.

Mr. Blake's claim against Defendant Fuller is based on his visit to the medical unit on December 7, 2008.  At that time, Mr. Blake reported several symptoms.  (*See* Doc. # 80-1 at 7-8 of 18).  He had a temperature of 101.7, a pulse of 104, labored respirations of 24, and his

pulse oxygenation was 100 percent.  He was alert and not in acute distress. His lungs were "clear with good air exchange."  The evidence does not show that Defendant Fuller denied or delayed medical treatment.  In response to Mr. Blake's symptoms and condition, Defendant Fuller consulted with Defendant Webster, the on-call P.A.   Defendant Fuller followed Defendant Webster's instructions for a treatment plan that included a throat culture, Motrin, Amoxicillin, Zantac, a 24-hour lay-in, and advising Mr. Blake to return to the medical unit as needed.  (*See* Docs. # 80-1 at 7-8 of 18, # 80-3).  The evidence shows that Defendant Fuller did not see Mr. Blake again before he was transferred to Sterling Regional Medical Center on December 10, 2008.  Mr. Blake fails to establish Defendant Fuller was deliberately indifferent to his serious medical needs.  Mr. Blake thus fails to demonstrate the subjective element of his Eight Amendment claim against Defendant Fuller.

Mr. Blake's claim against Defendant May is based on his visit to the medical unit on December 8, 2008.  On that date, Mr. Blake reported several symptoms, including chest pain, cough, and chest wall tenderness.  The evidence does not show that Defendant May denied or delayed medical treatment.  Defendant May performed an EKG, which showed normal results.  Defendant May consulted with the on-call P.A. and followed his instructions to discontinue Motrin, start Indomethacin, and perform a chest X-ray later that day.  (*See* Docs. # 80-1 at 9-10 of 18, # 80-4).  Mr. Blake fails to establish that Defendant May was deliberately indifferent to his serious medical needs.  Mr. Blake thus fails to demonstrate the subjective element of his Eighth Amendment claim against Defendant May.

Defendant Webster consulted with Defendant Fuller on December 8, 2008 and with Defendant May on December 9, 2008 regarding Mr. Blake's symptoms.  Defendant Webster also saw Mr. Blake on December 9, 2008 and consulted with Defendant Fortunato in evaluating Mr. Blake's chest X-ray.  Defendant Fortunato concluded that the chest X-rays showed pleural effusion.  Defendant Webster discontinued some of Mr. Blake's medications, prescribed other medications, and made arrangements to transfer him to the Sterling Regional Medical Center for an echo-cardiogram and further evaluation.  (See Docs. # 80-1

at 12-13 of 18; # 80-5)).   Mr. Blake arrived at the Sterling Regional Medical Center on December 10, 2008.   As Mr. Blake does not present evidence that demonstrates Defendant Webster denied or delayed medical care or was deliberately indifferent to his medical needs, he fails to present sufficient facts to show that Defendant Webster's conduct violated his Eighth Amendment rights.

Mr. Blake alleges Defendant Fortunato "is responsible for my health condition by being the Dr. on call for Sterling Correctional Facility." (*See* Doc. # 11 at 7, 9 of 11).   Defendant Fortunato did not see Mr. Blake personally.   On December 9, 2008, Defendant Webster brought Mr. Blake's chest X-ray to Defendant Fortunato.   Defendant Fortunato concluded that the x-ray showed pleural effusion.   Defendant Webster then commenced a referral for Mr. Blake to an outside medical provider for further assessment and treatment.   (*See* Fortunato Affidavit, Defendants' Exhibit A-6 (Doc. # 80-6)).   Mr. Blake does not present evidence that demonstrates Defendant Fortunato denied or delayed medical care.   Defendant Fortunato's only involvement with Mr. Blake's treatment was to review the chest X-ray shown to him by Defendant Webster, offer his opinion that Mr. Blake had pleural effusion, and confirm that Mr. Blake would be referred to an outside medical facility for further evaluation and treatment.   Mr. Blake does not allege and the evidence in the record does not demonstrate that Defendant Fortunato mis-read the X-ray or was deliberately indifferent to Mr. Blake's serious medical needs.   Mr. Blake fails to establish that Defendant Fortunato violated his Eighth Amendment rights.

Mr. Blake alleges that Defendant Milyard, the Warden of SCF, delayed by 3 to 4 hours his medical treatment at Denver Health Medical Center by not authorizing "the transport by ambulance." (*See* Doc. # 11 at 7, 9 of 11).   The undisputed evidence indicates that "[t]ransportation arrangements for inmates for medical care outside of the facility are made on a case-by-case basis and consider a number of factors, including but not limited to, medical necessity and the need for speed of transport and security." (*See* Milyard Affidavit, Defendants' Exhibit A-7 (Doc. # 80-7) at ¶ 2).   The medical unit determines if emergent

ambulance transportation is necessary, and the medical unit's determination controls the transport decision. (*See* CDOC Clinical Services, Clinical Standards and Procedures, Medical Emergencies and Emergency Transfers, Defendants' Exhibit A-8 (Doc. # 80-8) at 2-3 of 6). Defendant Milyard did "not typically make the transport decision for an inmate, and I do not have any recollection of making a transport decision in this matter." (*See* Doc. # 80-7 at ¶ 3). There is no factual record of Defendant Milyard's involvement in Mr. Blake's medical treatment or transport.  Mr. Blake has failed to establish that Defendant Milyard violated his Eighth Amendment rights.

C.      Conclusion

In sum, Mr. Blake has failed to establish that Defendants denied or delayed medical treatment or acted with deliberate indifference to his serious medical needs.  To the contrary, the evidence shows that Defendants provided continuous evaluation, tests, and treatment in response to Mr. Blake's evolving symptoms and complaints. Mr. Blake was seen at clinic visits on multiple occasions with regard to his medical complaints. Mr. Blake's pleural effusion was suspected on December 9, 2008.  On December 10, 2008, Mr. Blake was transported to an outside medical facility for further evaluation and treatment.  Upon confirmation of a diagnosis of pleural effusion, Mr. Blake was transported to Denver on December 10, 2008, where he received treatment on December 11, 2008 that resolved his symptoms.   The evidence demonstrates "a good faith effort" on the part of the Defendants "to diagnose and treat" Mr. Blake's medical condition.  *See Self v. Crum*, 439 F.3d 1227, 1232 (10th Cir. 2006).  Mr. Blake does not meet the "high evidentiary hurdle" of the  subjective component of deliberate indifference.  *See id.*

Mr. Blake submits nothing more than his subjective conclusory allegations that  he "was sent back to my unit untreated," and that even after "I began receiving anything that resembling appropriate treatment, . . . even then my necessary procedures were delayed . . ."  (*See* Doc. # 11 at 4 of 11).  While Mr. Blake suggests that Defendants should have

diagnosed plural effusion sooner, there is no evidence that Defendants were deliberately indifferent in not diagnosing it before December 9, 2008.  Mr. Blake alleges nothing more than his disagreement with the treatment he received between December 7 and December 10, 2008.  This is not sufficient to sustain a claim under the Eighth Amendment.  *See Estelle*, 429 U.S. at 107 (whether a certain form of treatment should be prescribed "is a classic example of a matter for medical judgment"); *Perkins v. Kansas Dept. Corrections*, 165 F.3d 803, 811 (10th Cir. 1999) (disagreement with medical personnel "does not give rise to a claim for deliberate indifference to serious medical needs");  *Olson v. Stotts*, 9 F.3d 1475, 1477 (10th Cir. 1993) ("[a] difference of opinion does not support a claim of cruel and unusual punishment");  *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980) (difference of opinion between inmate and prison medical staff regarding treatment or diagnosis does not itself state a constitutional violation).

Neither Defendant Fortunato nor Defendant Webster perceived Mr. Blake's condition as presenting an immediate emergency.  Defendants Fortunato and Webster both concluded that Mr. Blake's expedited transfer to an outside medical facility on December 10, 2008 was adequate under the circumstances.  (*See* Fortunato Affidavit, Defendants' Exhibit A-6 (Doc. # 80-6)).  Mr. Blake has not offered any expert medical evidence that the treatment he received was substandard or that the alleged 3 to 4 hour delay in transportation caused him any harm. Mr. Blake does not demonstrate that he has any medical training or expertise. While Mr. Blake alleges he experienced pain and emotional distress, he presents no evidence that he suffered any physical harm due to Defendants' actions or inaction.

Other than Mr. Blake's subjective opinion, there is no evidence supporting denial or delay of medical care or deliberate indifference to his serious medical needs.  The record in this case presents evidence of reasonable responses to Mr. Blake's gradually increasing complaints.  Having reviewed the evidence and the legal issues in this case, the court concludes that Mr. Blake has not presented sufficient evidence to support the claims in the Amended Complaint.  In the absence of specific evidence showing that Defendants denied

or delayed medical treatment to Mr. Blake, much less evidence suggesting that Defendants were deliberately indifferent to Mr. Blake's medical condition or caused him substantial harm, Defendants have qualified immunity from Mr. Blake's claims.   Because Mr. Blake does not meet the two-part test of the qualified immunity analysis, summary judgment is properly granted in Defendants' favor.   *See Clark*, 513 F.3d at 1222.   Accordingly,

IT IS RECOMMENDED that Defendants' Motion for Summary Judgment (filed March 2, 2011) (Doc. # 80) be GRANTED and that summary judgment enter on the Amended Complaint (Doc. # 11) in favor of all Defendants and against the Plaintiff.

**Advisement to the Parties**

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b);  *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review.   "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review."   *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996).   Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's

order, cross-claimant had waived its right to appeal those portions of the ruling);   *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling).   *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

DATED at Denver, Colorado, this 13th day of December, 2011.

BY THE COURT:


s/Craig B. Shaffer
United States Magistrate Judge